## S90P0921. SPENCER v. THE STATE.
### (398 SE2d 179)

BENHAM, Justice.

This is a case in which a death sentence has been imposed. The defendant, James Lee Spencer, originally was convicted and sentenced to death in 1975. The judgment was affirmed. *Spencer v. State,* 236 Ga. 697 (224 SE2d 910) (1976). However, Spencer obtained federal habeas corpus relief in connection with his challenges to the composition of his grand and traverse juries. See *Spencer v. Kemp,* 781 F2d 1458 (11th Cir. 1986). He has now been retried, convicted of malice murder, aggravated assault and escape, and sentenced to death.[1]

The crimes occurred on October 31, 1974, while Spencer was being transported in a police-type automobile from Richmond County to the Georgia state prison in Reidsville. The transporting officer's father-in-law rode with them. As they neared Millen, Georgia, a message came over the police radio that Spencer might be armed. He was. He also had a key to his handcuffs. Spencer, who was in the back-seat area of the car, shot the driver five times before he could stop the car, and he and his father-in-law got out. The driver, seriously wounded, lay on the ground outside the car. Spencer tried to kick his way out of the car. (The inside handles had been removed from the rear-seat area of the car.) When the father-in-law reached into the front-seat area of the car, Spencer shot him in the head, killing him instantly.

---

[1] Spencer was reindicted on April 29, 1987. He was sentenced to death for murder on September 3, 1987. A motion for new trial was filed on September 27, 1987, and amended several times thereafter. The motion for new trial was denied on October 4, 1988. A motion to reconsider was denied October 19, 1988. The case was argued orally on February 13, 1989. On May 25, 1989, this court remanded the case to the superior court for further proceedings. These proceedings were heard on January 16, 1990, and the trial court issued its ruling on March 28, 1990. The case was redocketed in this court on April 11, 1990, and the case was reargued on June 25, 1990.

Finally, Spencer managed to kick out one of the back windows, and exited the car. A state patrolman arrived and apprehended Spencer almost immediately.

Spencer testified at the guilt phase of the retrial. He admitted shooting the transporting officer and the father-in-law. He claimed he did so because he was frightened by the radio message and shot in panic.

The evidence supports the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. (a) In his sixth enumeration of error, the defendant complains of the court's refusal to excuse nine jurors allegedly biased against the defendant.

Four of these nine prospective jurors were not challenged for cause by the defense (Josey, Allen, Broxton and Mulling). The trial court did not err by failing to excuse sua sponte these unchallenged jurors. *Childs v. State*, 257 Ga. 243, 249 (7) (357 SE2d 48) (1987). We do not find erroneous the trial court's finding that the remaining five were qualified to serve as jurors. *Isaacs v. State*, 259 Ga. 717, 730 (21) (386 SE2d 316) (1989).

(b) In his seventh enumeration of error, the defendant contends a prospective juror should have been excused for cause for her attitude about the death penalty. However, she was not challenged at trial and, as above, the trial court did not err by not excusing the juror sua sponte. *Childs v. State*, supra.

(c) In his eighth and eleventh enumerations, Spencer contends the court erred by excluding for cause five prospective jurors who were conscientiously opposed to the death penalty. We need not consider the court's excusals of two of these prospective jurors (Williams and Lynch), as Spencer did not object at trial to these excusals. See *Blankenship v. State*, 258 Ga. 43 (2) (365 SE2d 265) (1988). The court's excusals of the other three were within the deference due the trial court's determination under *Wainwright v. Witt*, 469 U. S. 412 (105 SC 844, 83 LE2d 841) (1985). *Jefferson v. State*, 256 Ga. 821 (2) (353 SE2d 468) (1987). See also *Isaacs v. State*, supra (23).

(d) The "scope of the voir dire examination must, of necessity, be left to the sound discretion of the trial judge." *Curry v. State*, 255 Ga. 215, 218 (2 b) (336 SE2d 762) (1985). We do not find an abuse of discretion in this case, and find no merit to Spencer's claim that the voir dire examination was too restricted (enumeration 12) or that the trial court applied a "double standard" to challenges for cause (enumeration 8).

(e) In his tenth enumeration, Spencer contends the state exercised its peremptory challenges in a racially discriminatory manner. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The state answers that Spencer has failed to preserve this is-

sue for review on appeal. Spencer disagrees, claiming the trial court allowed him to reserve the issue.

Before the jury selection began, the trial court reminded the parties of the strictures of *Batson*, stating: "I hope that you all comply with that, and we won't have any problems with reference to that."

After the jury was selected, the court conferred briefly with the parties to see if there was "anything the court needs to take up prior to the trial. . . ." Near the end of the conference, the prosecutor asked if "there's a *Batson* objection. . . ." The court spoke to the defendant's attorney about *Batson*:

> *The Court*: Of course, I advised counsel about that in the beginning, and I saw no evidence of that. If you want to make any record, I'll let you make it at this time.

> *Mr. Allen* (for the defendant): Your Honor, I would like to just reserve that objection if I may. I really haven't had a chance to even consider it at this moment in time.

> *The Court*: All right, there's no objection at this time. All right. Bring the jury back, please. Excuse me, did you want a break? Let's take a break for about five minutes.

No *Batson* issue was raised until after trial and after the defendant's trial attorneys had withdrawn and new attorneys entered the case on behalf of the defendant. The issue was raised for the first time in Spencer's fourth amended motion for new trial. Spencer contends this delay is not fatal to his claim because the trial court "permitted defense counsel to reserve his right to raise a *Batson* objection until sometime later in the proceedings." However, the trial court did not explicitly allow counsel to reserve his objection; the court only noted there was *no* objection "at this time." Even if the court's response were liberally construed to implicitly grant the defendant some additional time to "make [a] record," we do not think the court's response can be interpreted reasonably to allow the defendant to wait until his fourth amended motion for new trial to raise a *Batson* issue.

In *Childs v. State*, 257 Ga. 243, 257 (21) (357 SE2d 48) (1987), we held: "A *Batson* issue must be raised in a timely manner, and *after* trial is too late." See also *State v. Sparks*, 257 Ga. 97 (355 SE2d 658) (1987). Because Spencer did not raise this issue in a timely manner, the trial court did not decide whether the defendant had made a prima facie case of discrimination and the trial court did not inquire about and the state did not explain its reasons for the exercise of its peremptory challenges. See *Gamble v. State*, 257 Ga. 325 (357 SE2d

792) (1987). We hold this claim is not preserved for review.[2]

2. The trial court did not err, as Spencer contends in enumeration 13, by refusing to charge the jury on voluntary manslaughter. *Horton v. State*, 249 Ga. 871 (1) (295 SE2d 281) (1982). Nothing in *Beck v. Alabama*, 447 U. S. 625 (100 SC 2382, 65 LE2d 392) (1980), requires a trial court to instruct the jury on a lesser offense where the evidence fails to warrant such a charge. *Hopper v. Evans*, 456 U. S. 605 (102 SC 2049, 72 LE2d 367) (1982).

3. Enumeration 14 alleges Spencer's death sentence was the result of racial discrimination. See *McCleskey v. Kemp*, 481 U. S. 279 (107 SC 1756, 95 LE2d 262) (1987). Spencer relies upon a post-trial affidavit from one of the jurors stating she overheard two white jurors making racially derogatory comments about the defendant during the jury's deliberations.

The general rule is that "affidavits of jurors may be taken to sustain but not to impeach their verdict." OCGA § 17-9-41. Exceptions are made to this rule in cases where extrajudicial and prejudicial information has been brought to the jury's attention improperly, or where non-jurors have interfered with the jury's deliberations. See, e.g., *Hall v. State*, 259 Ga. 412 (3) (383 SE2d 128) (1989) and cases cited therein. Compare FRE 606 (b).[3] The affidavit here does not fit within these exceptions to the rule. Compare *Shillcutt v. Gagnon*, 827 F2d 1155 (II) (7th Cir. 1987). See also Wright & Gold, Federal Practice and Procedure, Ch. 7, § 6074 at pp. 431-32. ("Most authorities agree . . . that the rule precludes a juror from testifying that issues in the case were prejudged, a juror was motivated by irrelevant or improper personal considerations, or racial or ethnic prejudice played a role in jury deliberations." (Footnotes omitted.))

The rule against allowing jurors to impeach their verdict serves important public interests. The rule discourages post-verdict harassment of jurors, enhances verdict finality and certainty, encourages free and open discussion among jurors during deliberations, and insulates jury value judgments from judicial review. However, these goals

---

[2] We note the trial jury was evenly split racially, and trial counsel testified at the hearing on the motion for new trial that he "did not see a need to raise a *Batson* challenge."

[3] FRE 606 (b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

are not absolute, and it has been held that the rule of juror incompetency "cannot be applied in such an unfair manner as to deny due process." *Shillcutt v. Gagnon,* supra at 1159; *Williams v. State,* 252 Ga. 7 (1) (310 SE2d 528) (1984); *Dobbs v. Zant,* 720 FSupp. 1566 (III) (N.D. Ga. 1989). See also Wright & Gold, supra at 437, n. 104 ("It is safe to say that *Rushen* [*v. Spain,* 464 U. S. 114 (104 SC 453, 78 LE2d 267) (1983)] at least stands for the proposition assumed in *Smith* [*v. Phillips,* 455 U. S. 209 (102 SC 940, 71 LE2d 78) (1982)] that juror testimony as to the effect of bias on decisionmaking may sometimes be received over a Rule 606 (b) objection.")

Spencer contends the juror's affidavit should have been considered notwithstanding the rule of exclusion, and that his conviction and death sentence should be reversed on the basis of the affidavit. We disagree.

> In cases too numerous to mention, the courts have moved decisively against procedures that attach a badge of inferiority to certain groups. This protection is needed even more critically in the courtroom setting, which is designed to assure equal justice to all. [*Avery v. State,* 174 Ga. App. 116, 119 (329 SE2d 276) (1985).]

The rule of juror exclusion, however, is sufficiently race-neutral that further protection is not required, and the evidence in the present case did not reach a level that would justify disregarding the rule. Other than the lone affidavit, Spencer offered no evidence that racial bias materially affected the jury's decision to convict him and to impose a death sentence. Compare *Dobbs v. Zant,* supra, 1574-1579 (summarizing evidence presented on *McCleskey* claim). Moreover, assuming the truth of the affidavit, it shows only that two of the 12 jurors possessed some racial prejudice and does not establish that racial prejudice caused those two jurors to vote to convict Spencer and sentence him to die. The trial court did not err by refusing to consider the affidavit. Compare *Tanner v. United States,* 483 U. S. 107 (107 SC 2739, 2751, 97 LE2d 90) (1987) ("District Court did not err in deciding, based on the inadmissibility of juror testimony and the clear insufficiency of the non-juror evidence offered by petitioners, that an additional post-verdict evidentiary hearing was unnecessary.")

4. Spencer argues in his 15th enumeration that the state offered impermissible "victim-impact" evidence in violation of *Booth v. Maryland,* 482 U. S. 496 (107 SC 2529, 96 LE2d 440) (1987). The evidence he complains about consists of two photographs of the victim, one taken while he was alive and one showing him deceased. In a murder case, the state has to prove beyond a reasonable doubt that the defendant "cause[d] the death of another human being." OCGA §

16-5-1. The two photographs were relevant to an essential element of the crime of murder. There was no violation of *Booth* here. *Moon v. State*, 258 Ga. 748 (16) (375 SE2d 442) (1988). Nor do we find meritorious his 21st enumeration in which he contends the photograph showing the victim after he was killed should have been excluded on grounds of gruesomeness. See *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983).

5. Following a *Jackson-Denno* hearing, the state introduced evidence of a statement given by the defendant to an investigator explaining how he had obtained and concealed the murder weapon. At the hearing, the investigator testified he spoke to the defendant with the permission of the attorney who was then representing the defendant. (The statement was obtained in 1974.) Based on this unrefuted testimony, the trial court admitted the statement. Now, relying on portions of the original trial transcript not introduced at this retrial, Spencer contends in his 16th and 17th enumerations of error that the statement was taken in violation of his right to counsel.

The statement at issue was, in toto: "A trustee had given [the gun] to [Spencer], and he had dismantled it and hid it over the shower for a number of days prior to being transported." In view of testimony by another inmate that he saw Spencer in possession of the gun at the jail, and the unrefuted testimony that Spencer was in possession of a gun while he was being transported, any possible error in the admission of this statement is harmless beyond a reasonable doubt.

6. We do not find that the state suppressed material evidence, favorable to the defendant, that was known to the prosecution but unknown to the defense. (Enumerations 18 and 20.) Hence, we find no violation of Spencer's rights under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). See *Parks v. State*, 254 Ga. 403 (3) (330 SE2d 686) (1985); *Castell v. State*, 250 Ga. 776 (2) (301 SE2d 234) (1983).

7. In his 19th enumeration, Spencer complains of the state's use of his prison records to cross-examine Spencer after Spencer testified on direct about his good behavior in prison. There was no objection at trial to this aspect of the state's cross-examination, and this issue is not preserved for review.

8. In his 22nd enumeration, Spencer contends the court erred in a number of its evidentiary rulings. Spencer complains of these rulings: (a) The trial court limited the re-direct examination of the defendant on the ground that it was repetitious of matters already brought out on direct and cross-examination. (b) The trial court allowed a state's witness to testify over objection that his investigation had uncovered no evidence that Spencer fired a warning shot before firing at either of his victims. (c) The trial court allowed this witness to describe the

scene depicted in a photograph while displaying it to the jury. (d) The trial court allowed the state to ask Spencer on cross-examination whether Spencer (who admitted killing the victim) had killed with "malice aforethought." (e) The court allowed a witness to testify that stains shown in a photograph were bloodstains.

The trial court enjoys a wide discretion in determining the admissibility of evidence. *Lee v. State*, 258 Ga. 762 (6) (374 SE2d 199) (1988); *Hicks v. State*, 256 Ga. 715 (13) (352 SE2d 762) (1987). Compare *United States v. Metallo*, 908 F2d 795 (11th Cir. 1990). We find no abuse of discretion here.

Spencer also complains of the admission of the handcuff key in evidence. There was no objection to this evidence at trial.

In addition, he complains that a photograph not admitted in evidence was displayed to the jury. There was no objection to this display. Moreover, although, probably through inadvertence, the state did not formally offer this photograph in evidence, it apparently was treated as evidence by all parties. (A copy is included in the transcript at p. 1040, with other photographs admitted in evidence.) See *Clayton v. State*, 149 Ga. App. 374 (1) (254 SE2d 495) (1979).

The identification of the murder weapon was sufficient. *Ramey v. State*, 238 Ga. 111 (4) (230 SE2d 891) (1976).

Contrary to the defendant's contention, a trial court may allow a witness to read from his notes if the witness had personal knowledge of the matters referred to. OCGA § 24-9-69; *Mincey v. State*, 257 Ga. 500 (6) (360 SE2d 578) (1987).

Finally, a trial court retains the discretion to allow leading questions on direct examination. OCGA § 24-9-63. There was no abuse of that discretion in this case.

9. In his 23rd, 24th and 28th enumerations of error, Spencer contends the district attorney and the trial court attempted to "orchestrate" a death sentence and were guilty of misconduct. Almost all of Spencer's allegations of prosecutorial misconduct relate to the prosecutor's opening statements, closing arguments, or the evidence of prior crimes, and are complaints raised for the first time after trial. The contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct. In this case, prosecutorial conduct not objected to at trial will not warrant reversal on appeal. See *Skipper v. State*, 257 Ga. 802 (3) (364 SE2d 835) (1988).

The defendant's allegations concerning the trial judge are not particularly helpful. If the court committed error, or abused its discretion, such matters can better be addressed directly than by filling a single enumeration of error with a "laundry list" of rulings by the court, many of which are addressed elsewhere in the defendant's brief and in this opinion. For example, we have held that the court did not

abuse its discretion in the conduct of the voir dire examination, and have addressed the court's rulings on the qualifications of specific jurors. See Division 1 of this opinion.

Spencer complains the court "pushed the trial to completion by holding court well beyond 5:00 p.m. each day." A trial court retains the discretion to determine how late to hold court before recessing for the evening. Although it is likely that such discretion could be abused, Spencer does not even try to demonstrate any abuse here.

In addition, Spencer contends the court allowed misconduct by state personnel. For example, he contends the court allowed the district attorney's investigator "to indicate his approval or disapproval of the testimony of various witnesses by nodding [or shaking] his head. . . ." The only reference in the transcript to this is at p. 678, when Spencer's attorney brought the matter to the court's attention at a bench conference. The court replied, "I'll tell him. I've noticed that, too." No further relief was sought by the defendant, and the matter was not raised again. We do not find that the court "allowed" misconduct by state personnel.

We find no merit to these enumerations of error.

10. In his first five enumerations of error, Spencer raises issues about the prosecutor's introduction of Spencer's criminal record of convictions based on guilty pleas.

We remanded this case previously (see fn. 1), noting that these convictions based upon guilty pleas were used in aggravation of sentence, and directing the superior court, in light of *Johnson v. Mississippi*, 486 U. S. 578 (108 SC 1981, 100 LE2d 575) (1988), to determine whether Spencer's guilty pleas were knowing, intelligent and voluntary. See *Zant v. Cook*, 259 Ga. 299 (379 SE2d 780) (1989).[4]

On March 3, 1970, Spencer pled guilty to one count of rape, two counts of assault with intent to rape, two counts of kidnapping, one count of assault with intent to murder and two counts of motor vehicle theft. There is no transcript of the plea colloquy. However, the trial judge who had accepted these pleas in 1970 testified at the hearing on remand. Judge Fleming identified a form he invariably used in 1970 when accepting guilty pleas. The form contained a list of questions to ask the defendant and his attorney. The questions to the defendant probed his educational background, his understanding of the charges against him and of his right to a jury trial, and whether the

---

[4] In *Johnson v. Mississippi*, supra, the U. S. Supreme Court reversed a death sentence based in part on a conviction set aside in habeas proceedings *after* the death sentence had been imposed. In *Zant v. Cook*, supra, we granted habeas relief on a 1950 murder conviction that had been used in aggravation in a 1985 death-penalty case. See *Cook v. State*, 255 Ga. 565 (340 SE2d 843) (1986).

defendant was entering his plea freely and voluntarily.[5] The attorney would be questioned to determine if he had consulted with the defendant, explained to him his rights, discussed the charges and explained the consequences of a guilty plea, and whether any reason might exist not to accept the plea.[6]

Judge Fleming testified he was confident that he would not have accepted a plea unless satisfied that it was knowing, intelligent and voluntary.

On October 31, 1974, Spencer pled guilty to one count of attempted escape. Judge Fleming presided over this guilty-plea proceeding also. Again, there apparently is no transcript of the guilty-plea hearing. However, Judge Fleming testified that in 1974 he relied upon a guilty-plea questionnaire filled out and signed by the defendant with the assistance of counsel, as well as personal questioning of the defendant. The record contains (1) the questionnaire signed by the defendant, (2) a certificate of the defendant's attorney stating that the attorney had investigated the case, reviewed the questionnaire with the defendant and assured himself that he understood the questions, and (3) an order signed by the trial court finding that

---

[5] The questions to be asked the defendant were, verbatim:

1. Are you the named John Doe in the indictment?
2. Do you understand the nature of the charges against you?

*Note*: At this stage an explanation of the charges might be necessary for the protection of the transcript, and the indictment should be read to the defendant.

3. Do you understand the English language?
4. How far did you proceed in school?
5. Can you read and write?
6. Have you consulted with counsel?
7. Do you understand that you have a right to plead either "guilty" or "not guilty?"
8. If you plead "not guilty," you will be entitled to a trial before a jury; but in the event you plead "guilty," this court will impose a sentence as provided by law.
9. Do you wish to enter a guilty plea?
10. Do you understand the meaning and the consequences of a guilty plea?

*Note*: In most cases, if not in all cases, the defendant ought to be informed as to the maximum sentence provided by law.

11. Have you been promised a lesser sentence or easier treatment or threatened into making a guilty plea?
12. Is this plea made of your own will—that is freely and voluntarily?
13. Please give me some of the facts surrounding your case, or your participation in the alleged criminal activity.

[6] The questions to the attorney were:

1. Mr. Attorney, have you had an opportunity to consult with the defendant?
2. Have you explained to him his legal and constitutional rights?
3. Have you discussed the charges against the defendant, and explained to the defendant the consequences of a guilty plea?
4. Mr. Attorney, is there any defense or any defect in either the process or the procedure in this case, or is there any other matter which could or should act to prevent the defendant from entering a plea of guilty or the court from accepting such a plea?

based on "questioning the defendant and his counsel" and on the "plea, acknowledgment and waiver," the defendant's plea was knowingly, intelligently and voluntarily entered.

(a) Spencer argues it was error to give the state an additional opportunity to present evidence on remand. We disagree. The trial court originally decided the guilty-plea issue on procedural grounds. Remanding the case to give the state an opportunity to present evidence on the merits of this issue did not subject the defendant "to be twice put in jeopardy of life or limb," U. S. Constitution, 5th Amendment. See *Lockhart v. Nelson*, 488 U. S. \_\_\_\_ (109 SC 285, 102 LE2d 265) (1988); *Hall v. State*, 244 Ga. 86 (259 SE2d 41) (1979).

(b) Spencer's guilty pleas were admitted without objection at trial. They were offered at the guilt phase of trial because Spencer was charged with the offense of escape and it was necessary to prove that he had been convicted of a felony and was in lawful custody. OCGA § 16-10-52 (a) (1). They were relevant at the sentencing phase as general evidence in aggravation, OCGA § 17-10-2, and the conviction for rape was relevant to prove the § b (1) statutory aggravating circumstance. See OCGA § 17-10-30 (b) (1).

Our remand order was not a ruling that the state's procedural objections to raising this issue were not valid. In *Pope v. State*, 256 Ga. 195, 209 (17) (345 SE2d 831) (1986), we held that "once the defendant raises the issue of knowing and voluntary waiver with respect to prior guilty pleas, the burden is on the state to establish a valid waiver." Since Spencer did not object at trial to the use of his prior convictions, we hold it was not error to admit them without proof by the state that Spencer had knowingly, voluntarily and intelligently entered his pleas of guilty.

However, with the benefit of the evidence presented at the hearing on remand, we now conclude, alternatively, that the state has proven satisfactorily that Spencer's guilty pleas were valid.

(c) We do not find that the prosecutor's cross-examination of the defendant at trial about his guilty pleas "amounted to unsworn testimony" as the defendant contends. Each party is entitled to a thorough and sifting cross-examination. OCGA § 24-9-64. Leading questions are allowed. OCGA § 24-9-63. There was no abuse of discretion by the trial court. *Mullins v. State*, 157 Ga. App. 204 (4) (276 SE2d 877) (1981).

(d) The trial court did not err by failing to give a limiting instruction to the jury about the guilty-plea evidence where the defendant did not request such an instruction.

11. In his 25th enumeration of error, Spencer contends he was denied effective assistance of counsel. See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

Spencer was represented at trial by Benjamin Allen and Sheryl

Hudson. Allen contacted the ACLU and several attorneys from Augusta to obtain information and advice about trying death penalty cases. He conferred with John Ruffin, who had represented Spencer at his first trial. Allen and Hudson interviewed all of the state's witnesses who would talk to them, and read the transcript from the first trial. They filed numerous pretrial motions and were granted funds to employ a psychologist to examine the defendant and to employ a sociologist to assist with jury selection.

In light of Spencer's criminal record and the strong evidence of guilt in this case, coupled with his good behavior in prison for the past ten years, defense counsel decided to take the approach that Spencer had once been wild and uncontrollable but had changed for the better.

Allen testified that he did not investigate the voluntariness of the prior guilty pleas because he had discussed them with Spencer and Spencer had told him the pleas were voluntary. Moreover, the crimes all pre-dated 1974, and the evidence was consistent with the defense strategy of proving Spencer's improved behavior.

Spencer contends his trial attorneys failed to conduct an adequate cross-examination of some of the state's witnesses. Allen, however, testified that these witnesses were favorable in some respects to the defendant, and he made a strategic decision not to try to discredit their testimony.

Spencer's strongest attack, however, is that his trial attorneys failed to present the testimony of witnesses who, Spencer claims, could have presented important evidence in mitigation at the sentencing phase of the trial.

Allen explained why he did not present the testimony of these witnesses. He testified that he was given a list of potentially mitigating witnesses by the defendant, and he tried to contact all of them. He was unable to contact Julie Lockhorn, who lives in Cincinnati, despite repeated efforts to do so. Allen pleaded with Joanna Gibson to testify on Spencer's behalf, but she stated she did not want to testify on the defendant's behalf. Allen testified: "[M]y position, if you've got a character witness that does not want to come down, leave them alone, because basically she has nothing good to say." Allen contacted Claude McCann, a counselor at the Georgia Diagnostic Center. McCann told Allen that "it was his feeling that Spencer had not changed." Other prison officials Allen contacted told him that Spencer had not changed and they could say nothing helpful to the defendant.

Spencer's trial attorneys presented mitigating evidence available to them. We find that Spencer has failed to overcome the strong presumption that his trial attorneys effectively represented him. See *Cook v. State*, 255 Ga. 565 (17) (340 SE2d 843) (1986).

12. In his 26th enumeration, Spencer claims the trial court erred by permitting jury deliberations to continue when one of the jurors was ill.

All the transcript shows is that just before closing arguments began at the guilt phase of the trial, the court stated:

> I understand one of the jurors is not feeling too well. We are going to try to get you some whatever you need to help you and get it to you just as soon as we can.

Then, the court interrupted the district attorney's closing argument:

> Mr. Sibley, excuse me just a minute. This man . . . one of the men on the jury has a stomach disorder and they sent over and got something he said he could take and help him through this.

Spencer did not object, and the record does not show that this juror was too ill to continue.

13. Next, Spencer argues he should have been granted a continuance to give him time to evaluate his prison records which arrived the first morning of jury selection. Spencer did not ask for a continuance, and has not shown he needed additional time to review these records. There was no error.

14. That the trial court's order denying the defendant's motion for new trial purported to find the grounds thereof "individually and collectively to be without merit" does not mean this court must address the merits of issues not timely raised at trial. Enumeration 29 is without merit.

15. In enumeration 30, Spencer contends the state refused to provide court-ordered discovery during the proceedings on remand. Spencer sought to review records of his guilty pleas and, as well, records in other cases of guilty pleas taken in Richmond County between 1969 and 1974. Some of the records he sought were in the custody of the Clerk of Court and the Director of the "Richmond County Retention Center." Apparently, pertinent information in the custody of the prosecutor or law enforcement agencies was furnished as requested. Moreover, as the district attorney argued below:

> The defendant's motion [to compel] shows on its face, in paragraph 5, that the clerk produced the requested records and allowed counsel the right of inspection. The fact that the Clerk apparently does not have custody of records sought by the defendant is not inconsistent with the fact that the [defense] has located plea transcripts in [records of] habeas corpus hearings [involving Burke County cases].

The district attorney noted that the Clerk was an independent official not under his direction or control, and suggested that the defendant bring the clerk into court to speak for himself. See, e.g., OCGA § 50-18-73. This the defendant failed to do. The trial court did not err by denying the defendant's "motion to compel." Supp. Record at 249-50.

16. The trial court did not abuse its discretion by refusing to grant a continuance at the sentencing phase of the trial to await the arrival of a witness who was not under subpoena, whose whereabouts were not known for sure, who had corresponded with the defendant but had only seen him a few times in prison, and whose possible testimony the court was informed about only on the afternoon of the last day of trial. See *Wilson v. State*, 250 Ga. 630 (8) (300 SE2d 640) (1983); OCGA § 17-8-25.

17. In his 32nd and 33rd enumerations, Spencer complains about the court's instructions on mitigating circumstances. While we do not see any reason to instruct a jury to list on the verdict form the mitigating circumstances it has found, we find no constitutional error. The trial court defined "evidence in mitigation" but cautioned the jury:

> Now, members of the jury, I charge you, you may . . . and this is a matter entirely in your discretion, recommend a life sentence for the accused on this charge based upon any mitigating circumstance or reason satisfactory to you or without any reason, if you, the jury, see fit to do so, in this case.
>
> I further charge you that you may sentence the defendant to life imprisonment although you find any or all the previously mentioned alleged aggravating circumstances to be present in the case and even though no mitigating circumstance or circumstances are found to exist in the case.

These instructions were repeated later in the charge. The court's charge did not impermissibly limit the jury's consideration of mitigating evidence. See *Romine v. State*, 251 Ga. 208 (10 b) (305 SE2d 93) (1983).

18. In his 35th enumeration, Spencer complains about the court's response to a jury question during its sentencing deliberations. However, the defendant agreed at trial with the court's response, and may not now complain about it.

19. The jury's written finding on the § b (1) circumstance referred to a prior record of "convictions" (plural). Spencer contends that since evidence shows only one capital felony conviction for rape, the evidence is insufficient to support the jury's § b (1) finding. See OCGA § 17-10-30 (b) (1).

The state presented no evidence that Spencer had more than one conviction for rape. Moreover, it was not disputed that he had that one conviction for rape. We note there was no objection to the form of the verdict, *Potts v. State*, 259 Ga. 96 (22) (376 SE2d 851) (1989), and find that the jury's § b (1) finding is supported by the evidence.

20. While the state may not argue that the defendant might be paroled, OCGA § 17-8-76, the state is permitted to argue that a defendant's probable future behavior "indicates a need for the most effective means of incapacitation, i.e., the death penalty. . . ." *Ross v. State*, 254 Ga. 22, 34 (7) (326 SE2d 194) (1985). The prosecutor did not err by arguing that, based on his record, Spencer is an escape risk.

21. Out-of-state counsel volunteered to represent the defendant after he was convicted and sentenced to death. A local attorney also represented the defendant for a short time but then withdrew. Spencer claims he withdrew because of pressure from the victim's daughter whom he describes as an elected official in Richmond County, and contends it amounted to state interference with his right to counsel. However, although the court was willing to hear from the local attorney about why he had withdrawn, Spencer declined to present his testimony. His legal contentions are therefore without factual support.

22. The issue of attorney fees for Spencer's original trial attorneys is not properly before this court. *Moon v. State*, 258 Ga. 748 (6) (375 SE2d 442) (1988).

23. The court did not err as contended in enumeration 41, by denying Spencer's motion for reconsideration of the denial of his motion for new trial.

24. We do not find that the sentence of death was imposed under the influence of passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1).

25. The jury found three statutory aggravating circumstances: § b (1), § b (9) and § b (10). The evidence supports these findings beyond a reasonable doubt. OCGA § 17-10-35 (c) (2).

26. The sentence of death is neither excessive nor disproportionate, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of a death sentence in this case.

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*Kinsman v. State*, 259 Ga. 89 (376 SE2d 845) (1989); *Morrison v. State*, 258 Ga. 683 (373 SE2d 506) (1988); *Cook v. State*, 255 Ga. 565 (340 SE2d 843) (1986); *Walker v. State*, 254 Ga. 149 (327 SE2d 475) (1985); *Mincey v. State*, 251 Ga. 255 (304 SE2d 882) (1983); *Stevens v. State*, 247 Ga. 698 (278 SE2d 398) (1981); *Tucker v. State*, 245 Ga.

68 (263 SE2d 109) (1980); *Collier v. State*, 244 Ga. 553 (261 SE2d 364) (1979); *Davis v. State*, 241 Ga. 376 (247 SE2d 45) (1978); *Stephens v. State*, 237 Ga. 259 (227 SE2d 261) (1976).

DECIDED NOVEMBER 21, 1990 —
RECONSIDERATION DENIED DECEMBER 19, 1990.

*Morrison & Foerster, John P. Batson, Charles L. Kerr, Ann M. Parrent,* for appellant.

*Michael C. Eubanks, District Attorney, Charles R. Sheppard, Assistant District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Assistant Attorney General,* for appellee.