## A00A1504. McCORKLE v. THE STATE.
(538 SE2d 161)

MILLER, Judge.

Cedric McCorkle was tried for two counts of aggravated child molestation. He was convicted on the first count but acquitted on the second. Following the denial of his amended motion for new trial, he

filed this appeal in which he claims that the evidence was insufficient to sustain the conviction and asserts that he was denied the right to a fair and impartial jury. Having examined both issues and finding no merit to either, we affirm.

On appeal, the evidence must be viewed in a light most favorable to the verdict and McCorkle no longer enjoys the presumption of innocence.[1] When so viewed, the evidence established that a licensed day-care provider, Tamanika Oda, befriended McCorkle, a restaurant co-worker, and allowed him to stay at her home in which she operated a day-care business. Oda testified that one afternoon she put four children down for their naps and then proceeded to take a shower. When she returned to the bedroom, the victim was lying on the bed and McCorkle was patting her on her back. The victim, almost four years old, cried out to Oda, "He's killing me, he's killing me." When Oda asked her what she meant, the child, visibly upset, looked at McCorkle and did not respond. Oda asked McCorkle to leave the room and questioned the child further. The child appeared to Oda to be upset and was crying and "huffing and puffing." The victim told Oda that McCorkle made her "put his wee-wee in her mouth." Upon further questioning, Oda determined that by "wee-wee," the child meant penis. When Oda then asked McCorkle to explain why the child would say something like that, McCorkle said all he did was fix her a sandwich.

Oda returned to the child and asked to be told exactly what had happened. The child told Oda that when she had gone downstairs to play, he "wanted to make a deal" and "put his wee-wee in her mouth." After Oda confronted McCorkle yet again, he left Oda's house taking most of his belongings with him.

On that same afternoon, as the victim's mother was buckling her daughter's seat belt, the victim suddenly blurted out, "Mommy, Cedric . . . put his wee-wee in my mouth." Infuriated, her mother proceeded to the restaurant to confront Oda. When she demanded to know why Oda had not contacted her, Oda said she had been scared. After the victim's mother contacted police, McCorkle, a dishwasher at the restaurant, was arrested that same evening.

Detective Paul Warner, an expert interviewer who had conducted nearly 1,000 interviews of child victims over a span of 14 years, met with the victim. On the same day the allegations of sexual abuse surfaced, Warner videotaped his interview of the victim, in which she confirmed the essential details of the crime. According to Warner, the child appeared "extremely upset." The jury was shown the videotape. At trial, the victim recounted a consistent description

---

[1] *Lawrence v. State*, 238 Ga. App. 102 (517 SE2d 822) (1999).

of the incident and reiterated the main details.

1. Claiming that he "presented a strong defense," McCorkle contends that the evidence was insufficient to sustain the conviction. He asserts that his own testimony "was equally plausible" and more consistent than that of the victim and argues that other persons "could have committed the offense."

Assessing witness credibility and resolving conflicts in trial testimony are matters strictly within the purview of a jury.[2] McCorkle, in essence, seeks a reweighing of the evidence. This we cannot do. The child's in-court testimony and the testimony confirming that she told her mother, her babysitter, and a detective that McCorkle put his "wee-wee" in her mouth and asked her to suck it were sufficient to establish the elements of aggravated child molestation.[3] Having considered the evidence in the light most favorable to the jury's verdict, we find ample evidence from which any rational trier of fact could have found McCorkle guilty beyond a reasonable doubt of aggravated child molestation as set forth in OCGA § 16-6-4 (c).[4]

2. McCorkle contends that he was denied his right to a fair trial because one juror, L. P., was biased against him. He claims that while this juror claimed during voir dire she could be fair and impartial, she later told other jurors that he was guilty.

As a general rule, the testimony of jurors may be taken to sustain but not to impeach a verdict.[5] Exceptions may occur when "extrajudicial and prejudicial information has been brought to the jury's attention improperly, or where non-jurors have interfered with the jury's deliberations."[6] OCGA § 17-9-41 effectively precludes jurors from engaging in post-trial attacks on their verdict on the basis of statements uttered to one another inside the jury room.[7] Specifically, the rule precludes a juror from testifying that issues in the case were prejudged, or that a juror was motivated by irrelevant or improper personal considerations, or that racial or ethnic prejudice played a role in jury deliberations.[8] Because McCorkle's claims of bias are similar and do not fall into any exception, the general rule precludes this effort to attack the verdict.[9]

---

[2] *Dismuke v. State*, 261 Ga. 254 (1) (403 SE2d 812) (1991).

[3] *Blackwell v. State*, 229 Ga. App. 452, 455 (3) (494 SE2d 269) (1997).

[4] *Castro v. State*, 241 Ga. App. 546, 548 (1) (527 SE2d 12) (1999); *Jones v. State*, 234 Ga. App. 571, 572 (1) (507 SE2d 804) (1998).

[5] OCGA § 17-9-41.

[6] *Spencer v. State*, 260 Ga. 640, 643 (3) (398 SE2d 179) (1990).

[7] *Watkins v. State*, 237 Ga. 678, 685 (229 SE2d 465) (1976) (juror misconduct occurred when members of the jury intentionally gathered highly prejudicial, extrajudicial evidence, and communicated their findings to other jurors).

[8] *Spencer*, supra, 260 Ga. at 643 (3).

[9] See *Gardiner v. State*, 264 Ga. 329, 332 (2) (444 SE2d 300) (1994); *Moore v. State*, 224 Ga. App. 797, 801 (6) (481 SE2d 892) (1997).

McCorkle also insinuated that L. P. may have been a personal acquaintance of the assistant prosecutor whom L. P. hugged shortly after the court dismissed the jurors from their service. But the assistant prosecutor testified that she had never before met the juror, and no evidence proved otherwise.[10]

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED AUGUST 9, 2000.

*Julie D. Herrin*, for appellant.
*J. Tom Morgan, District Attorney, Robert M. Coker, Sheila A. Connors, Assistant District Attorneys*, for appellee.

---

[10] Compare *Baker v. State*, 230 Ga. App. 813, 816 (4) (498 SE2d 290) (1998) (friendly personal exchange between prosecutor and member of jury that occurred during trial raised issue of prosecutorial misconduct and necessitated curative measures).