## A01A1096. HIGGINS v. THE STATE.
### (554 SE2d 212)

ELLINGTON, Judge.

A Fulton County jury convicted Lewis Higgins of three counts of aggravated sodomy, OCGA § 16-6-2 (a), two counts of aggravated child molestation, OCGA § 16-6-4 (c), and three counts of child molestation, OCGA § 16-6-4 (a). The trial court granted Higgins' motion for an out-of-time appeal, and Higgins filed his appeal with this Court. Higgins contends his trial counsel was ineffective, the trial court erred in denying his motion for a continuance and in admitting certain evidence, and the evidence was insufficient to support his convictions. Finding no error, we affirm.

1. On appeal from his criminal convictions, Higgins no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict. *Bethel v. State*, 232 Ga. App. 82, 83 (1) (500 SE2d 595) (1998). So viewed, the record reveals that shortly after Higgins began living with his girlfriend, Deborah Nolen, his eight-year-old daughter, T. H., moved in with them. T. H. had been living with her paternal grandmother in Tennessee. On December 5, 1989, Nolen caught Higgins in the act of performing oral sex on T. H. Nolen testified that shortly after she told Higgins she planned

to shower and then go to bed, she walked through the living room and saw T. H. sitting on the couch, her gown pushed up and her underpants pulled down. Higgins was crouched between T. H.'s legs, his mouth on her genitals. Nolen testified that she froze in horror, dropped the lotion bottle she had been holding, and said, "Oh, my God." Higgins told Nolen that he wanted her to catch him so that she would force him to get help. Nolen agreed to give Higgins a month to seek professional help. During that period, Nolen, and a neighbor in whom she confided, ensured that Higgins was never alone with T. H. Higgins never sought psychological help.

On January 1, 1990, Nolen confronted Higgins when he attempted to discipline T. H. by whipping her. Higgins became enraged and irrational. He began breaking things, "flicking" a knife back and forth, and threatening to kill himself. Two days after this incident, Nolen told Higgins she had "had it," that something had to be done about the situation with T. H. That night, while Nolen and T. H. watched television in bed, Higgins began fondling Nolen's breasts. Nolen told him to stop, but he refused. Nolen, herself a victim of child sexual abuse, testified that she was so frightened, she felt frozen in a state of shock. Higgins straddled Nolen and ordered T. H. to suck Nolen's breast. The frightened child complied. Higgins also pushed T. H.'s head toward his penis and ordered her to orally sodomize him while he orally sodomized Nolen. Nolen started to leave, but Higgins ordered her back into the bedroom. Higgins pushed Nolen's face between T. H.'s legs while he began to have anal sex with Nolen. When Nolen refused Higgins' command to perform oral sex on T. H., Higgins began to fondle T. H.'s genitals and to orally sodomize her. Again, Nolen tried to leave, but Higgins ordered her back, saying: "You know that's the best sex we've ever had since we've been together." A few days after this incident, Nolen confided in her neighbor and the two called the police.

Although T. H. later recanted her testimony, she initially told investigators and her paternal grandmother that Higgins molested her. Immediately after the police arrested Higgins, T. H. whispered in a detective's ear that her father "made her suck" Nolen's "boobs." A detective testified that during a videotaped interview, T. H. used anatomically correct dolls to illustrate the events of December 5 and of January 3. The videotaped interview was also played for the jury.

We find this evidence sufficient to support Higgins' convictions for child molestation, aggravated child molestation, and aggravated sodomy beyond a reasonable doubt. See *McCorkle v. State*, 245 Ga. App. 505, 507 (1) (538 SE2d 161) (2000); *Mann v. State*, 244 Ga. App. 756, 757-758 (1) (536 SE2d 608) (2000).

2. In his first two enumerations of error, Higgins contends the trial court erred in admitting the child victim's videotaped statement

into evidence. Higgins argues he was not given proper notice of the State's intent to use the videotape nor was he afforded ample time to prepare his defense once the videotape was admitted.

The record reveals that on March 12, 1990, Higgins filed "Consolidated Motions and Demands" for discovery.[1] While under former OCGA § 17-7-210,[2] Higgins was entitled to a copy of his in-custody statements ten days prior to trial, he was not entitled to a copy of the victim's videotaped statement. See, e.g., *Osborn v. State*, 233 Ga. App. 257, 259-260 (2) (a) (504 SE2d 74) (1998). In fact, discovery rules in effect in 1990 did not require the disclosure of nonexculpatory witness statements. *Walter v. State*, 256 Ga. 666, 668 (1) (352 SE2d 570) (1987); see also *State v. Lucious*, 271 Ga. 361, 362 (1) (518 SE2d 677) (1999). Further, because the trial court found (and Higgins concedes) that the videotape contained no exculpatory evidence, the State was not required to produce it under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). *McCoy v. State*, 174 Ga. App. 621, 624 (4) (330 SE2d 746) (1985).

Even though Higgins was not entitled to a copy of the videotape prior to trial, the trial court did allow him the opportunity to review the tape prior to its introduction since the prosecutor had said in a pretrial hearing that he did not plan to use the videotape. The record shows that the prosecutor made the tape available to Higgins a full day before it was admitted. Moreover, the trial court recessed early to allow Higgins a chance to study the tape. Further, the prosecutor made Higgins a copy of the tape so that it might be evaluated by any expert Higgins chose to retain. We find no evidence that Higgins was prejudiced by the prosecutor's statement that he did not intend to use the videotape at trial. The record shows that despite this statement, Higgins subsequently asked for and received funds from the State to retain an expert to assist in assessing the victim's mental state, in cross-examining the State's witnesses, and in generally preparing a defense. We find no error.

3. In parts (3) and (3) (a) of that section of his brief entitled "Preservation of Errors," Higgins asserts he was denied the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense.

---

[1] Higgins requested exculpatory material under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963); discovery under former OCGA § 17-7-210 (defendant's statements); discovery under former OCGA § 17-7-211 (scientific reports); and a copy of the indictment and a list of witnesses. We have not found, nor has Higgins shown us by citation to the record, a notice to produce the videotape at issue.

[2] Although former OCGA § 17-7-210 was repealed effective January 1, 1995, it is still applicable to the instant case because Higgins was indicted prior to that date. See, e.g., *Matthews v. State*, 221 Ga. App. 129, 130 (2) (470 SE2d 518) (1996).

*Smith v. Francis,* 253 Ga. 782, 783 (1) (325 SE2d 362) (1985) (citing *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)).

In enumeration (3) (a), Higgins asserts that trial counsel was ineffective for failing to object to portions of the prosecutor's closing argument. Higgins, however, has neither identified the specific statements to which counsel should have objected nor presented facts or legal argument[3] in support of his assertion that the prosecutor's statements were objectionable. Although Higgins included record citations to several pages of closing argument, we have found nothing within those pages that could be characterized as improper. Because this enumeration of error is essentially unsupported, we deem it abandoned pursuant to Court of Appeals Rule 27 (c) (2). *Lewis v. State,* 245 Ga. App. 234, 236 (3) (a) (537 SE2d 111) (2000).

In enumeration (3), Higgins states that he was "denied effective assistance of counsel." In the "Argument and Citation" portion of his brief, Higgins elaborates a little further, contending that he did not receive a fair trial "due to counsel's inability to adequately prepare for his defense." We surmise[4] that Higgins believes his counsel was deficient because he failed to retain an expert to assist in the preparation of his defense. Given the testimony at the motion for new trial hearing, the expert would have benefitted Higgins' defense, at best, by showing that T. H. was possibly "programmed or coached" by Nolen or investigators into giving untruthful statements. A review of the trial transcript, however, reveals that substantially the same evidence came in through the testimony of T. H. She testified that Nolen "told lies on her dad" and that Nolen told her "to tell the police that my dad had touched me where he wasn't supposed to, and he didn't." Also, Higgins' mother testified that T. H. told her that Nolen had coached her on what to do with the anatomically correct dolls. Because the expert's testimony would have been redundant of that already adduced, Higgins has not carried his burden of showing he was prejudiced by counsel's failure to retain an expert. See *Zant v. Moon,* 264 Ga. 93, 98 (440 SE2d 657) (1994) (even if trial counsel's conduct was deficient, defendant must prove there is a likelihood that counsel's deficient performance prejudiced the defense). We find no error.

---

[3] An assertion of error followed by a case citation is not legal argument. As we have explained, legal analysis "is, at a minimum, a discussion of the appropriate law as applied to the relevant facts." *Dixon v. MARTA,* 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000).

[4] In his brief, Higgins summarized the motion for new trial transcript by presenting a lengthy account of what his trial counsel did and did not do and of what his proffered expert witness thought about the case and the evidence adduced. However, Higgins never specifically articulated how counsel's performance was deficient or how that deficient performance affected the outcome of the trial.

*Judgment affirmed. Johnson, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 10, 2001.

*Johnson, Prioleau & Kenison, Theodore Johnson,* for appellant.
*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney,* for appellee.