75000, 75001, 75002. FATORA v. THE STATE.
(363 SE2d 566)

McMurray, Presiding Judge.

Defendant was indicted for manufacturing marijuana. The evidence adduced at trial, construed most favorably to support the jury's verdict, was as follows: Defendant and his wife reside on an eight and one-half acre parcel of real property in Towns County, Georgia, "[n]ear the community of Young Harris, about a mile from the city limits." Defendant and his wife have owned this property for "[a]bout 14 years. . . ."

During the morning of August 9, 1984, a Georgia Bureau of Investigation (GBI) "task force" was conducting an aerial observation of the Towns County, Georgia area when they sighted marijuana growing in "a heavily wooded area . . ." on defendant's property. The aerial observers directed several ground-based law enforcement officers to the marijuana and they discovered three separate concealed gardens consisting of 215 healthy marijuana plants which varied in height from six to fifteen feet. Two of the gardens comprised 30 fully mature marijuana plants and the third garden comprised 185 marijuana plants which were not as mature as the plants found in the smaller gardens. The plants of the larger garden appeared to be "the second crop that year, the second planting." A fourth area, which also appeared to be a small concealed garden, was discovered on defendant's property; however, all that remained of this garden were "little sink holes that looked like some kind of plant had been pulled out of the ground."

A closer inspection of the marijuana found growing on defendant's property revealed that the gardens had been cultivated so as to produce a "higher quality marijuana" known as "sensemelia." All of the marijuana gardens were well attended and one of the smaller marijuana gardens was found within 20 yards of a "barn" or "shed" where defendant had stored lawn and garden equipment. Although none of the marijuana gardens were visible from defendant's house or from the road leading to defendant's house, all of the marijuana gardens were easily accessible from the road leading to defendant's house and all of the marijuana gardens were connected by "path[s]" or "trail[s]."

Later in the afternoon on August 9, 1984, Agent Mike Roberts of the Georgia Bureau of Investigation met defendant at his home, advised him of his *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694), rights and questioned defendant regarding the marijuana

found growing on his property. Defendant denied knowledge of the marijuana and suggested that students of a nearby college, who defendant said had visited his property frequently, may have planted the marijuana. Agent Roberts then requested defendant to submit to a polygraph examination and defendant consented.

On September 4, 1984, defendant signed a stipulation to the effect that the results of his polygraph test would be admissible in evidence at trial. He then submitted to the polygraph examination and the results showed that defendant "was being deceptive . . ." as to his lack of knowledge of the marijuana found growing on his property. Two days after the polygraph examination, defendant was arrested and charged with violating Georgia's Controlled Substances Act.

From the evidence described above, and from other evidence adduced at trial, defendant was found guilty of manufacturing marijuana. After the denial of his motion for new trial, defendant filed a notice of appeal and two identical documents entitled, "NOTICE OF APPEAL FROM ORDER TERMINATING APPEAL BOND." As a result, the appeal from defendant's conviction was docketed in this court as Case Number 75000 and separate appeals were docketed from defendant's other filings as Case Numbers 75001 and 75002.

We have examined the records with regard to Case Numbers 75001 and 75002 and find that the issues raised therein were addressed by this court in an order entered on April 29, 1987, in Case Numbers 73771 and 74190. Consequently, since there remain no unresolved issues in these appeals, Case Numbers 75001 and 75002 are hereby dismissed. We now consider Case Number 75000. *Held*:

1. Defendant contends in his first enumeration of error that the trial court erred in failing to grant his motion for a directed verdict of acquittal because the evidence was insufficient to connect him to the marijuana found growing on his property.

" 'A connection can be made between a defendant and contraband found in his presence by evidence which shows that the contraband was discovered on premises occupied and controlled by the defendant with no right of equal access and control in others. *Mitchell v. State*, 150 Ga. App. 44, 46-47 (256 SE2d 652). Such occupation and control may be inferred when the accused is the owner or tenant of the premises upon which the illicit drugs are discovered. See *Mason v. State*, 146 Ga. App. 557 (4) (247 SE2d 118).' *Morris v. State*, 161 Ga. App. 141, 143 (288 SE2d 102) (1982)." *Shreve v. State*, 172 Ga. App. 190, 191 (322 SE2d 362). In the case sub judice, the evidence showing that two "crops" of mature marijuana were being cultivated on property where defendant and his wife alone reside was sufficient to sustain the rebuttable presumption that defendant was the owner of the marijuana. *Hendrixson v. State*, 167 Ga. App. 517, 519 (5) (306 SE2d 350). Considering this presumption in light of other evidence showing

the size of defendant's property, the number of marijuana gardens found on defendant's property, the proximity of the marijuana gardens from defendant's house and from the road leading to defendant's house and the results of defendant's polygraph examination, we find that it is not a reasonable hypothesis that defendant was completely unaware of the marijuana being manufactured on his property. See OCGA § 24-4-6; *Goode v. State*, 130 Ga. App. 791 (2) (204 SE2d 526); *Quarles v. State*, 142 Ga. App. 394 (2) (236 SE2d 139); *Rothfuss v. State*, 160 Ga. App. 863, 865 (2) (288 SE2d 579); and *Meeks v. State*, 178 Ga. App. 9, 13 (4) (341 SE2d 880). Compare *Ivey v. State*, 226 Ga. 821 (4) (177 SE2d 702); *Prescott v. State*, 164 Ga. App. 671, 673 (2) (297 SE2d 362); *Shockley v. State*, 166 Ga. App. 182 (303 SE2d 519) and *Shreve v. State*, 172 Ga. App. 190, supra. See *Smith v. State*, 245 Ga. 205 (2), 207 (264 SE2d 15), where the Supreme Court held "that the testimony that appellant lied during his polygraph test [was] sufficient independent evidence to corroborate the accomplice's testimony as to appellant's involvement in the crime."

Defendant attempts to shift ownership of the marijuana from himself by asserting the "equal access" rule. In this regard, defendant testified at trial that he had not been in the area where the marijuana was found "that year" and that "hunters" and "young people [came] in and out of [the area] frequently."

Although defendant's testimony supports a conclusion that others may have trespassed upon his property and planted the marijuana, there was no evidence that others did perform any type of cultivation on defendant's land. Further, " '(w)hile this "equal access" rule may be applicable with reference to the loose, portable quantities of contraband found inside the house, it is not properly applicable to the marijuana plants growing outside, which require a period of months to grow, mature, and be harvested.' *Goode v. State*, 130 Ga. App. 791 (2) (204 SE2d 526). See also *Heaton v. State*, 139 Ga. App. 83, 84 (227 SE2d 854)." *Hendrixson v. State*, 167 Ga. App. 517, 519 (4), supra. Consequently, since the equal access rule is not applicable in the case sub judice, we find that there was sufficient evidence presented from which a rational trier of fact could find defendant guilty beyond a reasonable doubt of the crime, manufacturing marijuana. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Hendrixson v. State*, 167 Ga. App. 517, 519 (4), supra.

2. In his second enumeration of error, defendant argues for the first time on appeal that the stipulation he executed, permitting the results of his polygraph test into evidence, is "defective" and will not support a basis for the admission of the results of his polygraph test at trial because it was executed "prior to the filing of [criminal] charges against [him] . . ." and because he was "unrepresented at the

time he signed the stipulation. . . ." See *State v. Craft*, 99 Wis.2d 128 (298 NW2d 530).

" '(O)ne is limited in his appeal to grounds of objection which he properly presented to the trial court; he cannot make them for the first time on appeal. *Abrams v. State*, 223 Ga. 216 (9) (154 SE2d 443).' *H. W. Ivey Construction Co. v. Transamerica Ins. Co.*, 119 Ga. App. 794, 795 (2) (168 SE2d 855). Grounds which may be considered on appeal are limited to those which were urged before the trial court. *Kitchens v. State*, 228 Ga. 624 (1) (187 SE2d 268); *Newberry v. State*, 126 Ga. App. 81, 82 (189 SE2d 891)." *Harrison v. Lawhorne*, 130 Ga. App. 314, 318 (5) (203 SE2d 292). Consequently, the issues raised in this enumeration of error will not be considered by this court. *Morris v. State*, 179 Ga. App. 228, 229 (3) (345 SE2d 686).

3. Next, defendant contends the trial court erred in failing to grant his motion to suppress the results of his polygraph examination because he did not "knowingly, intelligently or willfully consent or agree to the admission of the test results as evidence as required by Georgia law." Defendant argues that he did not "freely" and "voluntarily" submit to the polygraph examination because he thought it was a condition of his employment.

The evidence at the motion to suppress hearing showed that before submitting to the polygraph examination defendant was fully advised of his right to an attorney, his right to remain silent and not submit to the polygraph examination and his right to terminate the polygraph examination at any time he desired. Defendant was also advised that the results of the polygraph test may be adverse to his interest and could be "used against [him] in a court of law." Notwithstanding these warnings, defendant waived his rights and submitted to the polygraph examination. Earlier, defendant executed a document entitled, "STIPULATION" wherein he acknowledged that he was not required to submit to the polygraph examination and he agreed to submit to the examination and that the results of the test would be admissible at trial.

Although defendant testified that it was his "impression" that the polygraph examination was a condition of his employment, he affirmed on cross-examination that no person had threatened him with the loss of his job if he refused to submit to a polygraph examination. Defendant acknowledged on cross-examination that he was aware that if the results of his polygraph examination were adverse "there would probably be heavier consequences than the job." Finally, defendant executed a document after submitting to the polygraph examination wherein he affirmed "that during the entire time I was well-treated, submitted myself freely to the examination knowing that I could stop any time I so desired by merely saying that I wished to stop or that I wished to consult an attorney. I remained of my own

free will, knowing that I could leave this room at any time I so desired, and that there were no threats, promises, or any harm done to me during the entire period I have been here, either in connection with the examination or the signing of this consent."

" '(U)pon an express stipulation of the parties that they shall be admissible, the results of a lie detector test shall be admissible as evidence for the jury to attach to them whatever probative value they may find them to have.' *State v. Chambers*, 240 Ga. 76 (239 SE2d 324). In a motion to suppress or exclude a polygraph examination, as in a *Jackson-Denno* hearing, the trial judge is the trier of fact and resolves any and all issues of truthfulness, credibility, and conflicts in the evidence. His decision will not be disturbed in the absence of obvious error. Cf. *State v. Swift*, 232 Ga. 535, 536 (207 SE2d 459); *Woodruff v. State*, 233 Ga. 840, 844 (213 SE2d 689)." *Williams v. State*, 148 Ga. App. 55, 56 (2) (250 SE2d 848); *Dein v. Mossman*, 244 Ga. 866, 870 (3) (262 SE2d 83). In the case sub judice, we find no abuse of discretion or obvious error. The stipulation entered into between defendant and the State amply demonstrates that defendant fully and without reservation agreed to undergo a polygraph examination, the results of which would "be admissible into evidence through testimony of the operator in this case [, 'The *State of Georgia v. Joseph Fatora*, . . . charge of V.G.C.S.A.,'] or any other case where the same testimony is relevant provided that this stipulation in no way restricts the right of the defense or the state to cross-examination of said operator on the results of such tests. . . ." Consequently, the results of defendant's polygraph test were not erroneously admitted into evidence pursuant to this stipulation. See *Baxter v. State*, 159 Ga. App. 632, 633 (3) (284 SE2d 649).

4. In his final enumeration of error, defendant argues that the results of his polygraph examination should have been excluded from evidence at trial because "[t]he [State's polygraph] examiner was unskilled and the [defendant] was nervous [during the examination]."

"Whether or not a witness is allowed to testify as an expert is a question for the sound discretion of the trial court and such discretion, unless abused, will not be disturbed. *Rouse v. Fussell*, 106 Ga. App. 259 (4) (126 SE2d 830). Generally nothing more is required to entitle one to give testimony as an expert than that he has been educated in the particular trade or profession; and special knowledge involving a particular subject may be derived from experience as well as study and mental application. *Carter v. Marble Products Inc.*, 179 Ga. App. 122 (1) (175 SE2d 480); *Frazier v. State*, 138 Ga. App. 640, 645 (227 SE2d 284)." *Dennis v. State*, 158 Ga. App. 142, 143 (3) (279 SE2d 275). In the case sub judice, the evidence showed that the State's polygraph examiner was a "polygraph intern . . . working under a trained, licensed polygraph examiner . . ." at the time he ad-

ministered defendant's polygraph test. This witness testified that he "had run approximately 50 polygraphs at the time [he] ran the test on [defendant]" and, since administering defendant's polygraph test, he testified that he had conducted "almost 300 polygraphs . . ." and had been licensed as a polygraph examiner by the "State Board of Polygraph Examiners." Under these circumstances, we cannot say that the trial court erred in allowing the State's polygraph examiner to testify as an expert and give his opinion as to the results of the test he administered to defendant. See *Tate v. State*, 142 Ga. App. 487 (1) (236 SE2d 173).

"[B]y cross-examination [defense] counsel may show any vagueness of the electronic indications or any subjectiveness of the examiner's interpretations, as well as exploring conditions other than the subject's untruthfulness which could have produced such responses." *State v. Chambers*, 240 Ga. 76, 77, supra. In the case sub judice, we have examined the trial transcript and find that defendant's attorney thoroughly cross-examined the State's expert polygraph examiner, effectively stressing his weaknesses and testing the vitality of his opinion. Moreover, the defendant's attorney called an expert polygraph examiner who testified that he had examined defendant's polygraph test results and concluded that defendant's "chart is inconclusive. It does not show deception." Under these circumstances, we find that the trial court properly allowed "the jury to decide what weight should be given this evidence." *State v. Chambers*, 240 Ga. 76, 80, supra. This enumeration of error is without merit.

*Judgment affirmed in Case No. 75000. Appeals dismissed in Case Nos. 75001 and 75002. Sognier and Beasley, JJ., concur.*

DECIDED NOVEMBER 5, 1987 —
REHEARING DENIED NOVEMBER 20, 1987 —

*John A. Nuckolls*, for appellant.
*Michael Crawford, District Attorney*, for appellee.