A99A2306. GREEN v. THE STATE.
(532 SE2d 111)

MILLER, Judge.

Harold Lamar Green, also known as "Junior," was tried before a jury and found guilty of three counts of aggravated sodomy and three counts of aggravated child molestation for sexual acts directed at his minor half-brother, J. A. G. The evidence authorizing these convictions showed that defendant was eighteen at the time of trial, stood 6'3", and weighed 248 pounds, while the victim was age eight. From October 1997 to January 1998, defendant lived with his father and shared a bedroom with J. A. G. In a videotaped interview, J. A. G. claimed that defendant committed oral and anal sodomy on J. A. G. and made J. A. G. orally sodomize defendant. Physical examination confirmed that J. A. G.'s anus was red and raw. At first, J. A. G. did not tell his father what was happening because defendant "threatened to hit [him,]" and J. A. G. was afraid "because he [(defendant)] hits hard and [J. A. G.] didn't want [to be] hit." After J. A. G. and another young boy were discovered acting out sexually, J. A. G. told his mother, his father, and Dalton Police Officers Marvin Thompson and Charlie Mariney what defendant had done to him.

At sentencing, the charges for aggravated child molestation were merged with the respective counts for aggravated sodomy. Defendant's motion for new trial was denied, and this appeal followed. Defendant enumerates the State's attorney's closing argument, the extent of cross-examination, the admission of extrinsic acts evidence, and the denial of his motion for new trial on the special grounds of ineffective assistance of counsel and newly discovered evidence. We affirm.

1. We first consider Green's second enumeration of error, complaining of the denial of his motion for new trial on the ground of newly discovered evidence. Motions for new trial on this ground are addressed to the sound discretion of the trial judge, whose decision

will not be reversed on appeal unless that discretion has been abused.[1]

> It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.[2]

In support of his motion, defendant introduced medical evidence that, after trial, he was tested and diagnosed positive for Herpes Simplex I (cold sores) and Herpes Simplex II (genital herpes). According to Stephen Foster, M.D., Herpes Simplex II is passed by sexual contact, and even though it can remain asymptomatic in the sensory nerves, there is constant shedding of the virus so that the disease can be transmitted at any time. Symptoms are lesions or blisters and associated burning or tingling. Moreover, the blisters can be internal, in the urethra. The herpes virus has a recurring cycle of replication, with a tendency of increased incidents at six, twelve, and eighteen weeks. Anal sex transmits the virus more readily than vaginal intercourse, with transmission through pharyngeal or oral contact being more difficult. Any single episode of asymptomatic penile rectal intercourse could transmit the virus in up to eight percent of cases. Repeated acts of anal intercourse would increase the likelihood of transmitting the virus, as would the circumstance that the recipient's anus was red with some excoriation.

Defendant first complained of burning and itching in December 1997. If, as defendant testified, his last below-the-waist sexual contact was with his girlfriend in November 1997 and he showed no outward symptoms of herpes such as blisters or lesions during the period the alleged molestations occurred (although he experienced burning and a stinging, itching feeling), then, in Dr. Foster's expert medical opinion, it was "essentially impossible" for defendant to acquire HSV II since that time. According to the affidavit of Dr. White, the pediatrician who examined J. A. G. in March 1998 for physical signs of child molestation, the boy did not then have any indications of HSV II, genital herpes.

---

[1] *Seritt v. State*, 237 Ga. App. 665, 666 (2) (516 SE2d 366) (1999).

[2] (Punctuation omitted.) *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980), applying *Berry v. State*, 10 Ga. 511, 527 (14) (1851).

The inference defendant would have us draw is a negative one: because the victim J. A. G. did not have any indications of HSV II, defendant was not the perpetrator.[3] Given the low risk of asymptomatic transmission, we agree with the trial court that this evidence is not so material that it probably would have produced a different verdict.[4] While proof that either the victim or the aggressor in a sexual assault had (or did not have) a sexually transmitted disease certainly can be relevant,[5] this newly discovered evidence does not show the falseness, impossibility, or even improbability of the victim's direct testimony at trial that defendant committed the acts for which he was convicted.[6] We cannot say the trial court manifestly abused its discretion in overruling defendant's motion for new trial on the ground of newly discovered evidence.

2. The first enumeration complains of closing argument. The State's attorney argued:

> [J. A. G. is] waiting for justice. The State's waiting for justice. [J. A. G.] doesn't have any rights other than the twelve of you sitting here. It doesn't matter what your decision is today. It's never going to make it any better for [J. A. G.] It's always going to have happened to him. But the wrong decision could make it worse.

Whereupon defendant interposed the following objection: "Your Honor, I'm going to object. That's improper argument. The argument as to the effect of the jury on a person is as improper as it would be to argue about the trauma to the defendant who is accused." The trial court overruled the objection without any cautionary instructions, and closing argument continued.

Although defendant maintains on appeal that the State's closing

---

[3] Compare *Reece v. State*, 192 Ga. App. 14, 16 (383 SE2d 572) (1989) (in prosecution for rape, statutory rape, and child molestation, proof that the victim sustained a sexually transmitted disease authorized proof that the accused and his wife did not to rebut the inference that defendant was the perpetrator).

[4] See *Johnson v. State*, 236 Ga. App. 764, 765 (1) (513 SE2d 291) (1999) (victim's post-trial recantation only impeaching and not material); *Ortiz v. State*, 222 Ga. App. 432, 433 (1) (474 SE2d 300) (1996) (rape victim's post-trial affidavit stating no vaginal penetration not so material as to show probability of a different verdict).

[5] *Chambers v. State*, 205 Ga. App. 78, 79 (4) (421 SE2d 326) (1992) (in prosecution for incest and child molestation, trial court erroneously excluded evidence that victim tested positive for sexually transmitted disease); *White v. State*, 201 Ga. App. 53 (1) (410 SE2d 441) (1991) (in rape prosecution, trial court erroneously excluded medical evidence that victim exhibited infectious discharge within hours of the alleged rape); *Reece v. State*, supra, 192 Ga. App. at 16 (trial court erroneously excluded proof that defendant's pregnant wife did not have the sexually transmitted disease the victim sustained).

[6] See *Williams v. State*, 197 Ga. App. 274 (398 SE2d 381) (1990). Compare *Fugitt v. State*, 251 Ga. 451, 452 (1) (307 SE2d 471) (1983).

argument implied that a not guilty verdict "could make it worse" for the victim, we conclude that the State's express disclaimer that it "doesn't matter what your decision is today" negates any inference that the jury should return a guilty verdict solely because the victim would suffer from a not guilty verdict. The trial court did not err in overruling the stated objection.[7]

3. The trial court did not err in admitting into evidence proof that, two years before, defendant had been discovered kissing then-six-year-old J. A. G. or in admitting proof of defendant's statement that he used petroleum jelly to "get into tight places." Evidence of homosexuality or pederasty and indications of such sexual preferences are admissible in a trial for aggravated sodomy.[8] While evidence of homosexuality unrelated to the offenses charged is inadmissible,[9] both the prior act and statement in question have a logical connection to the offenses charged in that they illustrate defendant's preference for a particular victim or type of victim, plus reveal defendant's bent of mind or his modus operandi.[10] As to J. A. G.'s speculation on the videotape that defendant might have committed sodomy on other persons, there was no contemporaneous objection, and so this contention presents nothing for decision on appeal.[11] The third and fourth enumerations are without merit.

4. The fifth enumeration contends that the trial court erred in allowing the State's attorney to continually force defendant to declare that the State's witnesses were lying. Several times during cross-examination of defendant, the State's attorney elicited without objection defendant's insistence that the other witnesses were lying.

To ask the defendant if he himself is lying serves the important function of testing his veracity and credibility and so is well within the appropriate scope of cross-examination.[12] In *Cargill v. State*,[13] the Supreme Court of Georgia held that it is improper for the State's attorney to ask one witness if another witness is lying, because witnesses are to testify based on their personal knowledge of the relevant facts and are not to determine the veracity of other witnesses. But since then, without expressly overruling *Cargill*, the Supreme Court has twice held that it is permissible cross-examination to ask

---

[7] See *Moon v. State*, 258 Ga. 748, 760 (35) (375 SE2d 442) (1988) (observation that murder defendant showed victim no mercy within the wide latitude accorded prosecutors in closing argument).

[8] *Jones v. State*, 172 Ga. App. 347, 348 (2) (323 SE2d 174) (1984).

[9] *Rini v. State*, 235 Ga. 60, 65 (2) (218 SE2d 811) (1975).

[10] *Salters v. State*, 238 Ga. App. 45, 46 (2) (517 SE2d 593) (1999). Accord *Rini v. State*, 236 Ga. 715, 717 (2) (225 SE2d 234) (1976).

[11] *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992).

[12] *Ross v. State*, 192 Ga. App. 65, 67 (3) (383 SE2d 627) (1989).

[13] 255 Ga. 616, 631 (17) (a) (340 SE2d 891) (1986).

the defendant if other witnesses are lying.[14] We are bound by the latest decisions of the Supreme Court on this question[15] and so hold that the trial court in this case did not err in permitting the State's attorney to cross-examine the defendant by asking whether the other witnesses were lying.

5. The final enumeration is the denial of defendant's motion for new trial on the special ground of ineffective assistance of counsel.

(a) The failure (or refusal) of trial counsel to make meritless objections is not any evidence that counsel's performance fell below the acceptable constitutional standard of reasonably effective assistance that members of the bar in good standing are presumed to render.[16] Thus, trial counsel's failure in this instance to object to legitimate cross-examination or to renew objections to admissible evidence of extrinsic acts fails to prove the assistance rendered was ineffective.

(b) At the conclusion of his videotaped interview, in response to the question whether he knows of any other child whom defendant sodomized, J. A. G. speculates, "Probably some other friends. I don't know. Probably. I'm just saying probably." At the pretrial hearing on the admissibility of this tape, the State's attorney conceded that this statement should not be put before the jury and promised to "mute the tape toward that portion. . . ." But defendant's trial counsel testified he "expressly told them we did not want it muted; we did not want it eliminated." In counsel's professional judgment, the statement supported the argument that the child was fantasizing. It is sufficient to note that trial counsel's strategic choices made after thorough investigation are virtually unchallengeable.[17] The evidence in this case supports the trial court's determination that trial counsel's deliberate decision to allow the jury to hear J. A. G.'s last statement fell within the broad range of acceptable trial strategy.

(c) Remaining contentions regarding ineffective assistance have been considered and are without merit.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 17, 2000.

---

[14] *Whatley v. State*, 270 Ga. 296, 301 (13) (509 SE2d 45) (1998); *Dorsey v. State*, 259 Ga. 809 (3) (387 SE2d 889) (1990).

[15] *Hall v. Hopper*, 234 Ga. 625, 631 (3) (216 SE2d 839) (1975).

[16] *Hayes v. State*, 262 Ga. 881, 884 (3) (c) (426 SE2d 886) (1993); *Mann v. State*, 240 Ga. App. 809, 811 (2) (524 SE2d 763) (1999); *Mency v. State*, 228 Ga. App. 640, 645 (2) (b) (492 SE2d 692) (1997).

[17] *Ferrell v. State*, 261 Ga. 115, 120 (3) (401 SE2d 741) (1991); *Skillern v. State*, 240 Ga. App. 34, 36-37 (3) (521 SE2d 844) (1999).

*Richard K. Murray*, for appellant.

*Kermit N. McManus, District Attorney, Stephen E. Spencer, Assistant District Attorney*, for appellee.