## A02A1498. LOCKETT v. THE STATE.
### (573 SE2d 437)

RUFFIN, Presiding Judge.

A Cobb County jury found Johnnie Lewis Lockett guilty of one count of aggravated child molestation and one count of child molestation. On appeal, Lockett challenges the sufficiency of the evidence. Lockett also contends that the trial court erred in admitting the results of a polygraph examination and that he received ineffective assistance of counsel. Lockett's claims of error lack merit, and we affirm.

"On appeal from his criminal convictions, [Lockett] no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict."[1] So viewed, the evidence demonstrates that in June 2000, Lockett moved into an apartment with his fiancée, who was the victim's mother. On June 27, 2001, the mother took the victim to Mattie Musgrove's house. Ms. Musgrove, who is the victim's great-grandmother, provided child care while the mother worked. That morning, the victim told her great-grand-

---

[1] *Higgins v. State*, 251 Ga. App. 175 (1) (554 SE2d 212) (2001).

mother that Lockett had "dropped his pants and he had his thing out and told her to lick it." When Ms. Musgrove asked the victim if Lockett had "bother[ed]" her, she responded that Lockett had "touched her down there."

Ms. Musgrove called her son, Ulysses Musgrove, who is the victim's grandfather and a Cobb County police officer. Musgrove immediately left work and went to his mother's house where he spoke with the victim. According to Officer Musgrove, his granddaughter asked Ms. Musgrove if she was "going to tell grandad," and Ms. Musgrove responded that the victim should tell him. The victim repeated that Lockett had "made her lick his thing." Officer Musgrove then contacted the Crimes Against Children Unit of the police department to further investigate the allegations of molestation.

The victim was taken to the police station, where she was interviewed by Detective Mary Finlayson. During the interview, the victim drew a picture of what appeared to be male genitalia and said that "bubbles were coming out of [Lockett's] private[s]." The victim repeated that Lockett had made her lick him and that he touched her under her clothes while pointing to her vaginal area. Finally, the victim told Finlayson that Lockett was making a "stirring" motion with his genitalia "while she was licking his private part."

Detective Richard Whitaker called Lockett and asked him to come to the police station for questioning. During his interview, Lockett denied molesting the victim. Lockett then agreed to take a polygraph test, which he stipulated could be introduced during a trial. Two days later, Lockett returned to the police station, and Lieutenant Morris Nix administered a polygraph examination, which strongly suggested that Lockett was not being candid. After being confronted with the results of the test, Lockett incriminated himself.[2]

1. In three enumerations of error, Lockett challenges the sufficiency of the evidence. Our role, as an appellate court, is to determine

---

[2] An audiotape was made of Lockett's interview, which was admitted in evidence, but not included in the record on appeal. Although the absence of the tape is not critical to this appeal, we take this opportunity to remind litigants that, as a general rule, it is their duty to perfect the record on appeal. See *Brewer v. State*, 162 Ga. App. 228, 229-230 (291 SE2d 87) (1982). Pursuant to Court of Appeals Rule 21, this Court ordinarily does not accept original, physical evidence. We do, however, accept copies from the court clerk, as certified by the trial court. If consideration of such evidence is required, litigants should ensure either that a copy of the evidence is forwarded with the record or that a transcript is made, reflecting the significance of the evidence. See Court of Appeals Rule 21; OCGA § 5-6-41 (d). As Court of Appeals Rule 21 makes clear, this Court *may* order the clerk of the trial court to forward original evidence. This rule increases the burden on an already overburdened Court. Accordingly, the better practice remains for litigants to ensure that necessary evidence is forwarded with the record. This is particularly true with regard to evidence that is easily copied and/or transcribed such as audiotapes.

the sufficiency of the evidence.[3] In so doing, we neither weigh the evidence nor assess witness credibility.[4] "Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld."[5]

The victim in this case was six years old at the time Lockett molested her. Despite her tender years, she was unwavering when recounting the crime to her great-grandmother, grandfather, and Finlayson. Moreover, the victim provided disturbingly graphic details of the molestation while being interviewed by Finlayson — details no six-year-old would otherwise know. And, after Lockett voluntarily submitted to a polygraph test that undermined his credibility, he incriminated himself. Under these circumstances, the evidence was sufficient to support the jury's verdict.[6]

Lockett contends that the reason he was convicted was because the jury gave undue weight to the results of the polygraph test. This contention is based upon mere speculation, however, and it is not the function of an appellate court to speculate as to the weight the jurors assigned the evidence.[7] It follows that this claim of error presents no basis for reversal. Moreover, Lockett stipulated to the admissibility of the polygraph results and, thus, cannot now complain about what weight, if any, the jury gave to such evidence.[8]

2. Lockett asserts that the trial court committed "plain error" in admitting the polygraph results. "Plain error is that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding."[9] Although Lockett stipulated to the admissibility of the results of the polygraph examination, on appeal he argues that such examinations are so inherently unreliable that the admission of the results should constitute plain error notwithstanding a defendant's stipulation. This, however, is not the law.

"Polygraph tests are not a reliable source of evidence, and due to this fact, the law only allows them in evidence when both parties stipulate to the admission of such evidence."[10] However, "[u]pon an express stipulation of the parties that they shall be admissible, the

---

[3] See *Dean v. State*, 252 Ga. App. 204, 205 (1) (555 SE2d 868) (2001).

[4] See id.

[5] (Punctuation omitted.) Id.

[6] See *McCorkle v. State*, 245 Ga. App. 505, 507 (1) (538 SE2d 161) (2000).

[7] See *Jones v. State*, 253 Ga. App. 376, 377 (1) (559 SE2d 119) (2002) ("It is not our job as an appellate court to speculate what evidence the jury chose to believe.").

[8] See Division 2, infra.

[9] (Punctuation omitted.) *Buice v. State*, 239 Ga. App. 52, 56 (2) (520 SE2d 258) (1999).

[10] *Carr v. State*, 259 Ga. 318, 320 (1) (380 SE2d 700) (1989).

results of a [polygraph] test shall be admissible as evidence for the jury to attach to them whatever probative value they may find them to have."[11] And, such stipulation is binding on both parties.[12] As Lockett stipulated to the admissibility of the polygraph results, we find no error — much less plain error — in the trial court's failure to exclude the results.[13]

(a) Lockett also argues that the trial court erred in failing to give, sua sponte, limiting instructions prior to admitting the results of the polygraph test. As our Supreme Court has noted,

> [w]hen polygraph results are admitted at trial, either party is entitled, *upon request*, to have the jury charged concerning the meaning of this evidence. In giving the charge the judge should state that the examiner's opinions may only be used to indicate whether at the time of the polygraph examination the person examined believed that he was telling the whole truth; that the jury [is] not bound by the polygraph examiner's conclusions and his (or her) testimony is not controlling on the issues and may even be entirely disregarded; and that it is for the jury to decide what weight should be given this evidence.[14]

Lockett provides no authority — and we are aware of none — that would require the trial court to provide limiting instructions at the time the polygraph evidence was admitted absent a request from the defendant.[15] In any event, the trial court properly instructed the jury with respect to the polygraph results during its general charge, which eviscerates Lockett's claim of error.[16]

(b) According to Lockett, the trial court erred in qualifying Lieutenant Nix, who administered the polygraph examination, as an expert. Nix testified that he had been certified as a polygraph examiner, which required approximately 1,200 hours of training. Nix estimated that he had administered 2,000 polygraph examinations. Thus, the record reveals that Nix was properly qualified as an expert, and the trial court did not err in allowing him to testify as such.[17]

---

[11] (Punctuation omitted.) *Fatora v. State*, 185 Ga. App. 15, 19 (3) (363 SE2d 566) (1987).

[12] See *Watson v. State*, 230 Ga. App. 79, 80-81 (4) (495 SE2d 305) (1998).

[13] Id.

[14] (Emphasis supplied.) *State v. Chambers*, 240 Ga. 76, 80 (239 SE2d 324) (1977).

[15] See *Igidi v. State*, 251 Ga. App. 581, 584-585 (2) (554 SE2d 773) (2001) ("The law is well settled that the trial court does not commit reversible error by failing to give a contemporaneous limiting instruction without a request that it do so.").

[16] See *Murphy v. State*, 270 Ga. 72, 73-74 (2) (b) (508 SE2d 399) (1998).

[17] See *Vasser v. State*, 273 Ga. 747, 749 (2) (545 SE2d 906) (2001).

3. In his final enumeration of error, Lockett contends that he received ineffective assistance of trial counsel. "For [Lockett].to prevail on his ineffective assistance claim, he must rebut the presumption that counsel was effective and show that his attorney's performance was deficient and that the deficiency prejudiced his defense."[18] This Court will affirm the trial court's finding of effectiveness unless clearly erroneous.[19]

(a) Lockett contends that his trial counsel was deficient for failing to object to the introduction of the results of the polygraph examination or to seek its suppression. As discussed above, however, when the parties expressly stipulate to the admissibility of the results of such test, the results are clearly admissible. Here, before obtaining counsel, Lockett expressly stipulated to the admissibility of the results, and, thus, the results were admissible.[20] Trial counsel does not render ineffective assistance by failing or refusing to make a meritless objection.[21] It follows that Lockett's attorney did not render ineffective assistance on this basis.[22]

Lockett also asserts that his attorney should have requested contemporaneous limiting instructions when the polygraph results were admitted. We note, however, that the trial court properly instructed the jury on the use of polygraph evidence in its general charge. Under these circumstances, Lockett cannot establish that he was prejudiced by his attorney's failure to seek a contemporaneous limiting instruction.[23]

(b) According to Lockett, his trial attorney rendered ineffective assistance for failing to seek suppression of his statement. However, Lockett's own testimony at the hearing on his motion for new trial establishes that his statement was voluntary. Accordingly, Lockett's "trial counsel cannot have been ineffective for failing to challenge the admission of [this] statement[ ]."[24]

(c) Finally, Lockett contends that his trial attorney was ineffective for failing to call several witnesses who "were not interviewed because 'counsel did not think that they would be able to contribute anything to the trial of this case.'" Trial counsel testified that, in

---

[18] (Punctuation omitted.) *McRae v. State*, 252 Ga. App. 100, 103 (4) (555 SE2d 767) (2001).

[19] See id.

[20] Although Lockett suggests that his attorney should have withdrawn the stipulation, Lockett does not provide any legal authority that would permit a party to unilaterally withdraw an otherwise valid stipulation.

[21] See *Green v. State*, 242 Ga. App. 868, 872 (5) (a) (532 SE2d 111) (2000).

[22] See id.

[23] See *Champion v. State*, 238 Ga. App. 48, 49 (1) (b) (517 SE2d 595) (1999) (counsel's failure to seek contemporaneous limiting instruction on similar transaction evidence not ineffective assistance when principle covered in general charge).

[24] *Penny v. State*, 248 Ga. App. 772, 776 (2) (c) (547 SE2d 367) (2001).

child molestation cases, there are generally just two people at the scene — the accused and the victim. Thus, the attorney testified that he declines to call such witnesses unless a witness "can really contribute to the defense," opting instead to reserve the right to the final closing argument. Such decision clearly constitutes trial strategy, which does not serve as the basis of an ineffectiveness claim.[25] This is particularly true where, as here, the defendant presents no evidence at the motion for new trial hearing as to how the allegedly favorable witnesses would have assisted his defense.[26]

*Judgment affirmed. Barnes, J., and Pope, Senior Appellate Judge, concur.*

DECIDED OCTOBER 25, 2002.

*Robert A. Maxwell*, for appellant.
*Patrick H. Head, District Attorney, Frances D. Hakes, Amy H. McChesney, Assistant District Attorneys*, for appellee.

---

[25] See *Jordan v. State*, 247 Ga. App. 551, 554 (2) (544 SE2d 731) (2001).

[26] See *Randall v. State*, 234 Ga. App. 704, 706 (2) (a) (507 SE2d 511) (1998).