**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 21, 2014**

# In the Court of Appeals of Georgia

A14A1264. THOMAS v. THE STATE.

BRANCH, Judge.

Montavius Thomas was tried by a Clayton County jury and found guilty on two counts of sexual battery of a child.[1] He now appeals from the denial of his motion for a new trial, arguing that the trial court erred in admitting the results of his police-administered polygraph examination. We find no error and affirm.

The facts relevant to Thomas's appeal are undisputed. The record shows that in September 2011 the Clayton County Police Department received a report that Thomas had molested D. P., a minor child, on one or more occasions. The case was assigned to Detective James Watson, who interviewed Thomas on November 10, 2011. On that date, Thomas voluntarily went to police headquarters to speak with

---

[1] OCGA § 16-6-22.1 (b).

Watson; during the interview, he denied all of the allegations that had been made against him. At the end of the interview, Watson asked Thomas whether he would be willing to take a polygraph exam if offered the opportunity. According to Watson, Thomas stated "emphatically" that he wanted to take a polygraph "and in fact [expressed that] he wanted to take it right then." The polygraph exam, however, did not take place until almost two weeks later, on November 22, 2011. On that day, Watson picked Thomas up from his residence and drove him to police headquarters.[2] Watson explained to Thomas that after they arrived at the police station, there would be forms for Thomas to review and sign, including a form explaining Thomas's *Miranda* rights; that the entire process would take approximately three to four hours[3]; and that the exam would be conducted by an officer other than Watson.

At the police station, Thomas met with Phong Nyguen, the Clayton County officer who conducted the polygraph exam.[4] Before he began the polygraph, Nyguen reviewed three forms with Thomas, each of which Thomas signed after reading. The

---

[2] Watson testified that he drove Thomas to and from the polygraph exam because Thomas requested a ride.

[3] Testimony at trial showed that Thomas spent approximately 30 to 35 minutes attached to the polygraph equipment while answering questions.

[4] At trial, Nyguen was qualified as an expert in the field of polygraph testing.

2

first form was a *Miranda*-rights waiver form, which informed Thomas that any statements he made during the polygraph exam could and would be used against him "in a court of law." The waiver also advised Thomas as to all of his constitutional rights with respect to the exam, including his right to remain silent and his right to confer with counsel and to have an attorney present at the polygraph. This form further explained that Thomas could exercise his rights "at any time" during the polygraph exam, and elect "not [to] answer any questions or make any statements."

The second form that Nyguen reviewed with Thomas was titled "Consent To Take Polygraph Examination" ("the Consent"). This form stated that Thomas consented to the testing, including the placing of certain equipment on his body, and further provided that Thomas understood that he could "terminate the Examination at any time." Additionally, paragraph D of the form stated: "I [Thomas] understand that the results of the Examination will be made known only to myself, CCPD [Clayton County Police Department], and/or others as may be required by law."

The third and final form reviewed with and signed by Thomas was a stipulation as to the admissibility of the polygraph results ("the Stipulation"). In the upper, left hand corner of the document is the case caption "State of Georgia vs. Montavius

3

Thomas."[5] Below the case style, the document is captioned "STIPULATION," and the form provides, in relevant part:

> It is hereby agreed and stipulated . . . that any questions propounded by [the] Examiner, relating to the above[-]styled case and the answers thereto and everything appertaining to said examination, including any statements given and the entire results of said answers, be received in evidence in the above[-]styled case, either on behalf of the State or . . . the Defendant. The said Defendant hereby waives his/her constitutional privileges against self-incrimination to the extent that the same may be involved in the presentation in evidence on the foregoing matters. It is expressly stipulated that the foregoing shall not constitute a waiver of the Defendant's privileges against self-incrimination except as set forth above.

Approximately four months after he underwent the polygraph exam, Thomas was indicted on two counts of child molestation.[6] Prior to trial, Thomas filed a motion in limine seeking to exclude the results of his polygraph exam. Following a hearing on that motion, the trial court denied the same. The evidence relating to Thomas's

---

[5] The words "State of Georgia" are pre-printed on the form and "Montavius Thomas" is handwritten on a line provided immediately following "vs."

[6] Although indicted on two counts of child molestation, the jury convicted Thomas on the lesser included offense of sexual battery of a child.

polygraph exam was then heard by the jury, with Nyguen testifying as to his expert opinion on the results of the exam. Nyguen testified that when questioned about the allegations against him, Thomas denied the acts of molestation, and the exam indicated that these responses were "untruthful."

Thomas's sole claim of error on appeal is that the trial court erred in denying his motion in limine as to the polygraph results. As a general rule, the results of polygraph tests are not admissible in evidence, as they are not considered reliable. *Lockett v. State*, 258 Ga. App. 178, 180-181 (2) (573 SE2d 437) (2002). Where the parties enter into an "express stipulation" providing that the results of a particular polygraph exam will be admissible, however, a trial court shall admit such evidence "for the jury to attach to [those results] whatever probative value [it] may find them to have." *State v. Chambers*, 240 Ga. 76-77 (239 SE2d 324) (1977). See also *Beaudoin v. State*, 311 Ga. App. 91, 94 (4) (714 SE2d 624) (2011). Where, as here, a question is raised as to the existence or validity of an alleged stipulation, "the trial judge is the trier of fact and resolves any and all issues of truthfulness, credibility, and conflicts in the evidence." *Fatora v. State*, 185 Ga. App. 15, 19 (3) (363 SE2d 566) (1987) (citations omitted). And the trial court's ruling as to the validity of the stipulation will not be disturbed absent an abuse of discretion. Id. "An abuse of

5

discretion occurs where the trial court significantly misapplies the law or clearly errs in a material factual finding." *In re R. W.*, 315 Ga. App. 227, 232 (3) (c) (726 SE2d 708) (2012) (punctuation and footnote omitted).

Thomas's claim of error focuses on the requirement that any stipulation as to the admissibility of polygraph exam results be "express." The term "express," Thomas argues, means that there can be no ambiguity in the alleged stipulation. And he contends that the Stipulation at issue here is ambiguous and therefore invalid. We find no merit in this claim.

Thomas offers two arguments to support his assertion that the Stipulation is ambiguous. First, he asserts that the document itself is ambiguous because it provides that evidence of the polygraph will be admissible "in the above[-]styled case." Although the case style "State of Georgia vs. Montavious Thomas" is written at the top of the document, Thomas notes that no case number, court name, or other identifying information is given, nor does the document reflect any crime with which Thomas had been charged. Thomas argues that the lack of more specific information identifying the case in which the polygraph results would be admissible means the Stipulation is vague and not "express."

6

The specific case information which Thomas contends was necessary for the Stipulation to be valid was unavailable because at the time he executed the Stipulation, Thomas had not yet been arrested or indicted. Under Georgia law, however, a stipulation as to the admissibility of polygraph exams is not rendered void simply by the fact that the stipulation was made before the defendant was arrested or indicted. See *Beaudoin*, 311 Ga. App. at 93-94 (3); *Lockett*, 258 Ga. App. at 179. Indeed, because polygraph exams usually are administered during the investigation of a case, it would be illogical to require that they contain specific case information that would be available only after a suspect is arrested or indicted. Thus, our case law shows that the validity of a stipulation as to the admissibility of polygraph results does not depend on whether the defendant was under arrest or indictment at the time he entered the stipulation. Rather, in determining the validity of a stipulation, courts examine whether, at the time the stipulation was made, the defendant was aware he was the subject of a criminal investigation; was aware that criminal charges could be filed against him with respect to the matter that was the subject of the polygraph exam; and understood his constitutional rights, including his right to counsel, his right to remain silent and refuse the exam, and his right to terminate the exam at any time. See *Beaudoin*, 311 Ga. App. at 94 (4) (where defendant took the polygraph and

7

stipulated as to its admissibility while under investigation for alleged child molestation and "the evidence show[ed] that [defendant] knew and understood his rights before he waived counsel and stipulated to the admissibility of the polygraph results, the trial court's determination that stipulation was valid . . . will be affirmed") (citations omitted); *Ivey v. State*, 203 Ga. App. 886, 887 (1) (418 SE2d 71) (1992) (where a defendant being investigated for alleged child molestation made "a knowing waiver of his right to counsel and stipulate[d] to the admissibility of the results of a polygraph examination, the results are admissible at trial"); *Fatora*, 185 Ga. App. at 18-19 (3) (stipulation executed during the investigative phase of the case was valid where evidence showed that the defendant was informed of and understood his rights, including his right to counsel, right to remain silent, right to refuse the polygraph exam, and his right to terminate the exam at any time).

Here, the evidence shows that at the time he signed the Stipulation, Thomas was aware he was under investigation and could be arrested for the alleged acts of child molestation about which he was being questioned, and Thomas does not contend otherwise. Moreover, the evidence shows that Thomas was informed of and understood all of his constitutional rights with respect to the polygraph exam, including his right to remain silent, his right to refuse the exam, and his right to

8

terminate the exam at anytime, and he does not dispute this evidence on appeal. Given these circumstances, the fact that the Stipulation was executed before Thomas was arrested or indicted does not render the Stipulation invalid.

Second, Thomas argues that paragraph D of the Consent, which provides "that the results of the [polygraph] Examination will be made known only to [Thomas], CCPD [Clayton County Police Department], and/or others as may be required by law," means that the results would not be admissible at trial. He further contends that the Consent and Stipulation must be read and construed together and when so read, paragraph D renders the Stipulation ambiguous and therefore unenforceable. Despite Thomas's arguments to the contrary, however, paragraph D makes no mention of whether the polygraph results would or would not be admissible. Rather, that paragraph simply provides that the results of the exam (including, presumably, any potentially embarrassing responses unrelated to the incident under investigation) would not be indiscriminately disseminated to third-parties. Paragraph D further provides that the results would be made known to the Clayton County Police Department, which was the entity investigating the allegations against Thomas, "and/or others as may be required by law." And where an investigation ends in the arrest of a suspect, the police are legally obligated to provide the prosecutor's office

9

with any evidence of the crime, including the results of any polygraph examination conducted as part of the investigation. See, e. g., *Hester v. State*, 268 Ga. App. 94, 98 (2) (601 SE2d 456) (2004) ("[m]aterial in the possession of an investigating law enforcement agency is deemed to be in the possession of the State, whether or not it is in the prosecutor's file") (citation and footnote omitted); *Nikitin v. State*, 257 Ga. App. 852, 855 (1) (c) (572 SE2d 377) (2002) (for purposes of pretrial discovery, "[a]ny information obtained . . . by law enforcement officers in the course of their investigation must be attributed to the prosecutor") (citation and footnote omitted). Thus, we find no merit in Thomas's argument that paragraph D conflicts with or is inconsistent with an agreement that the results of the polygraph would be admissible at trial.

Under the circumstances of this case, we find no error by the trial court in denying Thomas's motion in limine and in admitting evidence concerning the results of Thomas's polygraph exam. Accordingly, we affirm the order of the trial court denying Thomas's motion for a new trial.

*Judgment affirmed. Barnes, P. J., concurs specially and Boggs, J., concurs in judgment only*.

A14A1264. THOMAS v. THE STATE.

BARNES, Presiding Judge, concurring specially.

While I agree with the outcome in this case, I do not agree with all that is said, and therefore I specially concur in the majority opinion.[1] The pro se defendant did not "expressly stipulate" to the admissibility of this otherwise-inadmissible evidence, and the trial court should not have admitted it. The properly-admitted evidence establishing the defendant's guilt is overwhelming, however, and therefore I conclude that the error is harmless.

"A stipulation is a 'voluntary agreement between opposing counsel concerning disposition of some relevant point.' (Black's Law Dictionary, 1269 (5th ed. 1979))." *McKinney v. State*, 281 Ga. 92, 95 (2) (635 SE2d 153) (2006) (no ineffective assistance claim absent evidence State would have been willing to enter into a stipulation authorizing admission of polygraph results). In 1977, our Supreme Court

_____

[1]Because I do not agree with all that is said, this opinion is physical precedent only. Court of Appeals Rule 33 (a).

held for the first time that "upon an *express stipulation* of the parties that they shall be admissible, the results of a lie detector test shall be admissible as evidence for the jury to attach to them whatever probative value they may find them to have." (Emphasis supplied) *State v. Chambers*, 240 Ga. 76, 76-77 (239 SE2d 324) (1977) (under former law requiring corroboration of victim in rape case, polygraph results admitted per stipulation was sufficient corroboration).

Further, an unrepresented defendant may freely and voluntarily waive his right to remain silent and stipulate that polygraph evidence is admissible at trial. *Van Kleeck v. State*, 250 Ga. 551, 552-553 (3) (299 SE2d 735) (1983); *Lockett v. State*, 258 Ga. App. 178, 180-181 (2) (573 SE2d 437) (2002); *Fatora v. State*, 185 Ga. App. 15, 18-19 (3) (363 SE2d 566) (1987). But none of these cases examined whether the documents signed by the defendants constituted "express stipulations," because apparently all of the documents specifically stated that the evidence could be introduced at trial. The documents Thomas signed in this case are not "express stipulations"; rather, they are ambiguous and unclear. We construe ambiguous contracts against the drafter. *Hill v. John P. King Mfg. Co.*, 79 Ga. 105, 109 (3 SE 445) (1887) ("The author of the ambiguity has the burden of explaining it when he seeks to take the benefit of a construction favorable to himself; and if he does not

2

clear up the meaning beyond doubt, the doubt must be given against him."). We construe statues levying taxes and criminal statutes against the government, and insurance contracts against the insurer who drafted them. *Hughes v. State*, 269 Ga. 819, 821 (2) (504 SE2d 696) (1998); *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (3) (470 SE2d 659) (1996); *Thompson v. Ga. Power Co.*, 73 Ga. App. 587, 597 (37 SE2d 622) (1946). We should do no less in this case, and construe these documents against the State.

The documents the defendant signed in this case do not expressly stipulate that the results of his polygraph test would be admissible at trial. The document titled "Stipulation" is a masterful example of confusing legalese. A document by which an unrepresented defendant agrees to allow the State to admit incriminating evidence that is otherwise inadmissible should at least make it clear that the defendant is doing so. But this document appears to have been drafted to make that point as obscure as possible. It reads, in its entirety:


State of Georgia                         DATE:  11/22/11
v.
Montavius Thomas                         PLACE:  CCPD


3

STIPULATION

It is hereby agreed and stipulated that Phong Nguyen, of the Clayton County Police Department, is an expert Polygraph (lie detector) Examiner. It is also stipulated that any questions propounded by said Examiner, relating to the above styled case and the answers thereto and everything appertaining to said examination, including any statements given and the entire results of said answers, be received in evidence in the above styled case, either on behalf of the State or on behalf of the Defendant. The said Defendant hereby waives his/her constitutional privileges against self-incrimination to the extent that the same may be involved in presentation in evidence on the foregoing matters. It is expressly stipulated that the foregoing shall not constitute a waiver of the Defendant's privileges against self-incrimination except as set forth above.

/s/ Montavius Thomas
Defendant

/s/ [Illegible]
Examiner


Further, if the State wanted to ensure that Thomas was agreeing that the results of his polygraph would be admissible at trial, it could have drafted the "Consent to Take Polygraph Examination" to say that. Instead, the document says, "I understand that the results of the Examination will be made known only to myself, CCPD, and/or others as may be required by law." The majority finds no ambiguity because the police are legally required to share incriminating evidence with the prosecutor's

4

office; ergo, the consent form does not conflict with the document titled "Stipulation." Technically, it is true that the police must share evidence with the prosecutor, but that is the problem with these forms and this process. The documents can be technically parsed by lawyers and judges to mean what the State says they mean, but from the defendant's point of view, they are not straightforward statements stipulating to the admissibility of otherwise-inadmissible evidence. They should be construed against the State, and the trial court should have sustained the defendant's objection to their admission at trial.